USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_______________
DATE FILED: 11/5/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EAST PARK TECHNOLOGIES INC., et al.,

Plaintiffs,

-v-

BEYOND ALPHA VENTURES LLC, et al.,

Defendants.

26-cv-2390 (LJL)

MEMORANDUM AND ORDER

LEWIS J. LIMAN, United States District Judge:

Plaintiffs East Park Technologies Inc. ("East Park") and EMWR Investments LLC ("EMWR," and with East Park, "Plaintiffs") move, pursuant to Federal Rule of Civil Procedure 55(b)(1), for default judgments against Defendants Beyond Alpha Ventures LLC ("Beyond Alpha") and Jacob Frankel ("Frankel," and with Beyond Alpha, "Defendants"). Dkt. Nos. 20, 25. For the reasons that follow, the motions are granted in part and denied in part.

**BACKGROUND**

The Court assumes the truth of the factual allegations of Plaintiffs' First Amended Complaint, Dkt. No. 10 ("FAC"), for purposes of this motion. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("[A] defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint." (internal quotation marks omitted)).

East Park is a Delaware corporation with its principal place of business in Boca Raton, Florida. FAC ¶ 10. EMWR is a limited liability company formed under the laws of Delaware, with the same principal place of business as East Park. *Id.* ¶ 11. EMWR has two members: Elizabeth White ("White") and White's minor child. *Id.*

Beyond Alpha is a Wyoming limited liability company with its principal place of business in New York, New York. *Id.* ¶ 12. Frankel, an individual residing in New York, is Beyond Alpha's sole member and its Chief Executive Officer. *Id.* ¶¶ 12, 21.

Non-party Payward, Inc. is the parent company of non-party Kraken.com, a cryptocurrency exchange and investment platform (collectively, "Kraken"). *Id.* ¶ 1.

Plaintiffs allege that they sought to invest a total of $350,000 in pre-initial public offering shares of Kraken through Defendants. *Id.* ¶ 21. Frankel had represented to Plaintiffs that their investment would be deposited in a special purpose investment vehicle that would be created, established, and administered by Sydecar, Inc. ("Sydecar"), a software-based third-party service provider specializing in the formation, operation, and regulatory compliance of special purpose vehicles ("SPVs") for investment purposes. *Id.* ¶ 22, 45. The money would go to the SPV named "Kraken March 2025, a Series of CGF2021 LLC" (the "Kraken SPV"). *Id.* ¶ 27. Plaintiffs were further assured that they would be provided with all customary documentation, agreements, and related confirmation of their investment. *Id.* ¶32. Plaintiffs' total investment was made through two transactions. First, on or around September 30, 2025, East Park transmitted $250,000 and then, on or around October 6, 2025, EMWR provided $100,000, both amounts to be invested in the Kraken SPV. *Id.* ¶¶ 23–24. Defendants confirmed receipt of those funds. *Id.* ¶ 25.

Before the transfers, on or about September 29, 2025, White texted Frankel inquiring as to why the wire instructions Frankel provided were "different than from Sydecar" and why the bank referenced by Frankel was not the same as the bank he had previously referenced in connection with the Kraken SPV. *Id.* ¶¶ 43, 61. To fraudulently misdirect Plaintiffs' investment to Beyond Alpha's company bank account, Frankel reassured White that they "both end up at the

same place." *Id.* ¶¶ 44, 62.

Plaintiffs allege that, rather than depositing their investment into the bank account belonging to the SPV, Defendants deposited the funds in Beyond Alpha's bank account. *Id.* ¶¶ 25, 30. On February 20, 2026, White, on behalf of Plaintiffs, contacted Sydecar to request confirmation of Plaintiffs' membership status in "Kraken March 2025, a Series of CGF2021 LLC," the SPV that Defendants expressly represented would be properly formed, funded, and established for the purposes of administering the investment of Plaintiffs and others in Kraken. *Id.* ¶ 27. White also requested copies of the subscription agreements, the acceptance date of same, capital contributions and current ownership percentages, and other pertinent information regarding the Kraken SPV. *Id.* ¶ 28. Three days later, on February 23, 2026, Sydecar responded that the Kraken SPV had never held a closing on the Sydecar platform, that neither Plaintiff had been duly admitted to the Kraken SPV, that no subscription agreements had been recorded with the SPV, and that the Kraken SPV had been dissolved because, among other things, the SPV had never received any funds from Defendants, including Plaintiffs' investment funds. *Id.* ¶ 30.

Plaintiffs repeatedly requested documentation and information from Defendants regarding the status of their respective investments in the Kraken SPV. *Id.* ¶ 31. However, Frankel repeatedly refused to deliver or otherwise provide such information, including subscription agreements related to Plaintiffs' investment. *Id.* ¶ 31. Defendants have consistently refused to return and refund the entirety of Plaintiffs' respective investments. *Id.* ¶ 33. In one exchange, Frankel responded to Plaintiffs' inquiries about their investment with the warning: "if you want to play more games and continue to have attorney bills and essentially Sue yourselves by suing me because [] I'd be using your money to sue you back so that makes no sense." *Id.* ¶ 35.

## PROCEDURAL HISTORY

Plaintiffs filed their complaint in this action on March 24, 2026, Dkt. No. 1,[1] and the FAC on March 27, 2026, Dkt. No. 10. Plaintiffs assert claims for common law fraud, fraudulent inducement, unjust enrichment, conversion, breach of an implied-in-fact contract, breach of fiduciary duty, and constructive trust. FAC ¶¶ 38–135. As relief, they seek damages in an amount not less than $350,000. *Id.* at 21–22.

The FAC and summons were served on Beyond Alpha through its registered agent on April 14, 2026. Dkt. No. 12; Dkt. No. 16 ¶ 6. On May 12, 2026, Plaintiffs filed an application for a clerk's certificate of default as to Beyond Alpha, averring that service was properly made on April 14, 2026. Dkt. No. 16 ¶ 6. The Clerk of Court issued a certificate of default with respect to Beyond Alpha on May 12, 2026, Dkt. No. 17, which Plaintiffs served on Beyond Alpha by first class mail to Beyond Alpha's registered agent on May 13, 2026, Dkt. No. 18. Plaintiffs made this motion for a default judgment against Beyond Alpha on June 2, 2026. Dkt. No. 20. On May 11, 2026, Plaintiffs served the FAC and summons on Frankel by delivering a copy of them on his father, Sheldon Frankel, and by mail to Frankel at his actual place of residence. Dkt. No. 19. On June 4, 2026, Plaintiffs applied for a clerk's certificate of default with respect to Frankel. Dkt. Nos. 21–22. The Clerk of Court issued a certificate of default with respect to Frankel on June 4, 2026, Dkt. No. 23, which Plaintiffs served on Frankel the following day by United States Postal Service Express Mail and first class mail to Frankel's last known address and where the summons and FAC were served upon him, Dkt. No. 24. Plaintiffs moved

[1] The complaint asserted subject matter jurisdiction based on diversity but did not allege citizenship of EMWR's and Beyond Alpha's members. Dkt. No. 1. The Court ordered Plaintiff to show cause why the case should not be dismissed for lack of subject matter jurisdiction. Dkt. No. 9. The FAC responded to the Court's order to show cause and properly alleged the citizenship of the parties that were limited liability companies. FAC ¶¶ 10–13; Dkt. No. 11.

for a default judgment as against Frankel on June 8, 2026. Dkt. No. 25.

The Court issued an order on June 17, 2026, requiring Defendants to respond to the motions for default judgment by July 10, 2026, and scheduling a hearing on the motions for default judgment for July 20, 2026. Dkt. No. 28. As required by the Court, Plaintiffs served the Court's order on both Beyond Alpha and Frankel. Dkt. Nos. 29–30. By letter dated July 8, 2026, Frankel wrote to the Court asking for a one-week extension to respond to the motion for a default judgment, indicating that he was attempting to retain counsel. Dkt. Nos. 32–33. The Court granted the extension over the objection of Plaintiffs. Dkt. Nos. 31, 34.

The Court held the hearing as scheduled on July 20, 2026. Dkt. No. 35. Plaintiffs appeared as did Frankel. *Id.* No counsel appeared for Beyond Alpha. *Id.* The Court granted Defendants until August 7, 2026, to respond to the complaint and to move that the Court consider that response out of time and to file a motion for vacatur of the certificate of default and to oppose the motions for default judgment. *Id.* The Court also directed Frankel to file a notice of *pro se* appearance and scheduled a renewed hearing on the motions for default judgment for August 14, 2026. *Id.*

On August 14, 2026, Plaintiffs and Frankel appeared for the hearing, and no counsel appeared for Beyond Alpha. Dkt. Nos. 36, 39. The Court provided Frankel with an opportunity to be heard and advised Frankel that barring an update from the parties, including as may be relevant to settlement, the Court would rule on the motions for default judgment "in short order." Dkt. No. 36; Dkt. No. 39 at 12:12–13:2, 15:8–25.

On October 13, 2026, the Court filed a further order permitting "[a]ny submissions by any party in response to the certificate of default or the motion for a default judgment" by October 27, 2026. Dkt. No. 36 at 2. The Court directed Plaintiffs to serve a copy of its October

13, 2026 Order on Defendants. *Id.* On October 14, 2026, Plaintiffs filed certificates of service indicating that service had been completed upon Frankel and Beyond Alpha. Dkt. Nos. 37, 38. To date, Frankel has not filed a notice of *pro se* appearance. Neither defendant has filed an opposition to the respective motions for default judgment or to vacate the certificates of default. Beyond Alpha has not appeared in the case.

**DISCUSSION**

Federal Rule of Civil Procedure 55 sets forth a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default and the entry of a default judgment. *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Mickalis Pawn Shop*, 645 F.3d at 128; *see* Fed. R. Civ. P. 55(a). The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted" by the pleadings. *Mickalis Pawn Shop*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(b). Whether entry of default judgment at the second step is appropriate depends upon whether the well-pleaded allegations against the defaulting party establish liability as a matter of law. *Mickalis Pawn Shop*, 645 F.3d at 137.

While a defendant who defaults admits the well-pleaded factual allegations in a complaint, because a party in default does not admit conclusions of law, "a district court need not agree that the alleged facts constitute a valid cause of action." *Id.* (internal quotation marks and citation omitted); *see Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020) ("The essence of Fed. R. Civ. P. 55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than it would obtain in a contested proceeding assuming it prevailed

on all of its factual allegations."). Therefore, this Court is "required to determine whether the [plaintiff's] allegations establish the [defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

The legal sufficiency of a non-defaulting party's claims "is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the movant's favor." *WowWee Grp. Ltd. v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019). A default judgment entered on well-pleaded allegations does not reach the issue of damages, and a plaintiff "must therefore substantiate [her] claim for damages with evidence to prove the extent of those damages." *Hood v. Ascent Med. Corp.*, 2016 WL 1366920, at *15 (S.D.N.Y. Mar. 3, 2016), *report and recommendation adopted*, 2016 WL 3453656 (S.D.N.Y. June 20, 2016), *aff'd*, 691 F. App'x 8 (2d Cir. 2017) (summary order).

By failing to appear before the certificates of default were entered, both Defendants have admitted to the well-pleaded allegations of the complaint. Plaintiffs' well-pleaded allegations are legally sufficient to establish Defendants' liability. First, Plaintiffs have established liability for fraud as a matter of law. Under New York law,[2] a fraud claim requires "that: (1) the defendant made a material false statement or omission; (2) the defendant intended to defraud the plaintiff; (3) the plaintiff reasonably relied upon the representation or omission; and (4) the plaintiff suffered damage as a result of such reliance." *B & M Linen, Corp. v. Kannegiesser,*

---

[2] The Court applies New York's choice-of-law analysis as the forum state. *See Maryland Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 151 (2d Cir. 2003). Under New York's "center of gravity" approach, "the [quasi-]contractual dispute at issue" is governed by New York substantive law because Defendants are in New York and the alleged wrongdoing stemmed from actions (*i.e.*, solicitation of funds) that presumably took place in New York. *See NYQF Inc. v. Sigue Corp.*, 781 F. Supp. 3d 104, 118 (E.D.N.Y. 2025).

*USA, Corp.*, 679 F. Supp. 2d 474, 480 (S.D.N.Y. 2010) (quoting *Cent. Pacific, Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 218 (S.D.N.Y. 2007)). Plaintiffs were misled into consummating the transactions. They relied on Frankel's false representation that any money transferred to his Bank of America account would ultimately flow into the Kraken SPV. But once the money was deposited into Beyond Alpha's bank account, it never made its way into the Kraken SPV. Sydecar, the SPV's administrator, told Plaintiffs that the SPV was dissolved and that no investments by Defendants were completed. Plaintiffs have since requested their money back yet received no refund. In response to their inquiries, Frankel instead issued a warning that "[he]'d be using [Plaintiffs'] money to sue [them] back." FAC ¶ 35. The circumstances provide sufficient indicia of an intent to defraud Plaintiffs of $350,000, which is the extent of money damages Plaintiffs incurred by relying on Frankel's representations.

As an alternative basis for liability, Plaintiffs are entitled to relief on their unjust enrichment claim. "Unjust enrichment is a quasi-contractual theory of recovery that exists in the absence of an affirmative agreement." *Shak v. Adelphi Univ.*, 549 F. Supp. 3d 267, 274 (E.D.N.Y. 2021). "Under New York law, a plaintiff may prevail on a claim for unjust enrichment by demonstrating (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Brockington v. Dollar Gen. Corp.*, 695 F. Supp. 3d 487, 516 (S.D.N.Y. 2023) (quoting *Nordwind v. Rowland*, 584 F.3d 420, 434 (2d Cir. 2009)). Plaintiffs and Defendants struck a bargain that Plaintiffs would provide money to be invested in the Kraken SPV. Frankel and Beyond Alpha surely benefited at Plaintiffs' expense by procuring the $350,000 intended to fund that investment, which was instead diverted into Defendants' own bank account with no steps taken whatsoever to follow through in purchasing

shares of Kraken SPV. Notions of equity and justice mandate, that considering Defendants' failure to uphold their end of the bargain, Plaintiffs ought to be returned to the status quo ante.[3]

In the context of default judgment, "a court may determine appropriate damages based on affidavits and documentary evidence as long as the court has ensured that there is a [specified] basis for the damages." *Burns v. Scott*, 635 F. Supp. 3d 258, 272 (S.D.N.Y. 2022) (citation modified). Plaintiffs have submitted evidence that East Park invested $250,000 and EMWR invested an additional $100,000 based on Frankel's misrepresentations and that Defendants have refused to return any portion of that investment. Dkt. No. 20-1 ¶¶ 13, 20–21; Dkt. No. 25-1 ¶¶ 13, 20–21. Therefore, no inquest is necessary. *See Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974).

## CONCLUSION

Accordingly, the motions for default judgment are GRANTED IN PART and DENIED IN PART. The Clerk of Court is respectfully directed to enter judgment against Frankel and Beyond Alpha, each jointly and severally liable for $350,000 plus pre- and post-judgment interest at 9% along with taxable costs, to close all open motions, and to close the case.

SO ORDERED.

Dated: November 5, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge

[3] Because Defendants are liable for fraud or, alternatively, unjust enrichment, and liability on either claim fully supports the judgment requested, the Court need not reach Plaintiffs' other five causes of action. Those claims would be "duplicative" since "they arise from the same facts and do not allege distinct damages." *See Cont'l Cas. Co. v. Contest Promotions NY, LLC*, 2016 WL 1255726, at *4 (E.D.N.Y. Mar. 28, 2016) (citation modified). The fraudulent inducement, conversion, breach of implied-in-fact contract, breach of fiduciary duty, and constructive trust claims are therefore dismissed. *See Alto Lending, LLC v. Altobridge Ltd.*, 2018 WL 3300636, at *10 (S.D.N.Y. Jan. 19, 2018) ("Where a plaintiff has already been awarded damages on one claim, courts generally dismiss as duplicative additional claims that arise from the same facts as the first claim, and do not allege distinct damages." (internal quotation marks omitted)), *report and recommendation adopted*, 2018 WL 2084170 (S.D.N.Y. May 2, 2018).